IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROUGHNECK CONCRETE DRILLING & SAWING COMPANY, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | |
| PLUMBING CONTRACTORS' ASSOCIATION OF CHICAGO AND COOK COUNTY; CHICAGO JOURNEYMEN PLUMBERS' LOCAL UNION 130; PLUMBERS' PENSION FUND, LOCAL 130, UA and its TRUSTEES; PLUMBERS' WELFARE FUND, LOCAL UNION 130, UA and its TRUSTEES; TRUST FUND FOR APPRENTICE AND JOURNEYMEN EDUCATION AND TRAINING, LOCAL UNION 130, UA and its TRUSTEES; THE PLUMBING COUNCIL OF CHICAGOLAND and its TRUSTEES; GROUP LEGAL SERVICES PLAN FUND, LOCAL 130, U.A. and its TRUSTEES; THE JOINT ARBITRATION BOARD and its individual members, TEN JOHN DOES AND/OR JANE DOES,[1] ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 08 C 5990 related to Case No. 08 C 7047 Judge Joan H. Lefkow |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff, Roughneck Concrete Drilling and Sawing Company ("Roughneck"), filed this action under Section 10 of the Federal Arbitration Act ("FAA") to vacate an arbitration award entered on July 22, 2008 by the joint arbitration board ("JAB") established pursuant to the

---

[1] The trustees of the Funds; the Plumbing Contractors' Association of Chicago and Cook County (referred to in the text as "Plumbing Contractors' Association"); Chicago Journeymen Plumbers' Local Union 130, U.A. (referred to in the text as "Plumbers' Union, Local 130"); the Joint Arbitration Board, and its individual members, ten John Does and/or Jane Does (referred to in the text as "JAB") have all been dismissed from this case. *See* Docket Nos. 58, 88; Pl.'s Resp. in Opp. to Mot. to Dismiss at 15 (Docket No. 55). Accordingly, only the various fringe benefit funds (referred to in the text as "Funds") remain defendants.

collective bargaining agreement between the Plumbing Contractors' Association of Chicago and Cook County ("Plumbing Contractors' Association") and Chicago Journeymen Plumbers' Local Union 130, U.A. ("Plumbers' Union"), which ordered Roughneck to pay approximately $3.3 million to certain fringe benefit funds established by the agreement. Count I requests that the court vacate the JAB's July 22, 2008 decision and award, alleging, *inter alia*, that the JAB exceeded the scope of its powers in making the award. Count II requests that the court vacate the award under the doctrine of promissory estoppel. This court's jurisdiction rests on 9 U.S.C. § 10 and 28 U.S.C §§ 1331 and 1367(a). Defendants, Plumbers' Pension Fund, Local 130, U.A.; Plumbers' Welfare Fund, Local Union 130, U.A.; Trust Fund for Apprentice and Journeymen Education and Training, Local Union 130, U.A.; The Plumbing Council of Chicagoland; and Group Legal Services Plan Fund, Local 130, U.A. (collectively the "Funds"), now move to dismiss under to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Funds' motion [#28] will be granted.

## RELEVANT FACTS[2]

Roughneck is a concrete core drilling, cutting, and sawing contractor that does business in the Chicago area, as well as Northwest Indiana and Southern Wisconsin. As a member of the Plumbing Contractors' Association, Roughneck was a signatory to a collective bargaining agreement between the association and the Plumbers' Union ("CBA"). The CBA creates the JAB to which the Plumbers' Union and Roughneck agreed to submit "all arbitrable disputes arising between them." CBA, Art. III, Sec. 3.2, attached as Ex. A to Compl. The Funds are

---

[2] Unless otherwise noted, the facts discussed in this section are derived from the Complaint and the exhibits attached thereto in accordance with the legal standards set forth *infra* at 12.

established pursuant to Article IX of the CBA. The Funds are entitled to conduct audits of members of the Plumbing Contractors' Association.[3]

## I. The Funds' Audit of Roughneck

On August 9, 2006, Roughneck was notified that an audit was to be conducted by the Funds for the period of October 1, 2002 through June 30, 2006. Compl. ¶ 28. The auditors determined Roughneck owed in excess of $2.2 million to the Funds in fringe benefit payments. *Id*. ¶¶ 43-44. That amount was based on work performed not only by members of the Plumbers' Union (whom Roughneck had not employed since 2004), but also by members of Plumbers Local 93, Plumbers & Pipe Fitters Local 501, the Laborers' International Union of North America, Local Nos. 1, 2, 4, 76, 96, 118, 152, 727 and 1006 ("Laborers' Union") and the International Brotherhood of Electrical Workers, AFL-CIO, Local Nos. 134, 150, and 176 ("Electrical Workers' Union") (collectively referred to as the "non-Plumbers' Unions"). *Id*. ¶¶ 41, 49, 51. The auditors sent Roughneck the results of the audit on January 7, 2008. *Id*. ¶ 43.

## II. The Grievances filed by the Funds and Roughneck with the JAB

Douglas Lindsay ("Lindsay"), counsel to the Funds, filed notice with the JAB of the dispute over the audit on January 22, 2008.[4] *Id*. ¶ 53. On February 12, 2008, Roughneck filed

---

[3] Members of the Plumbing Contractors' Association are referred to as employers in the CBA. CBA, Art. I, Sec. 1.1.

[4] Article III, Section 3.3 of the CBA governs Audits. It provides, in relevant part,
> If the Employer fails to make the payments shown on the audit, fails to meet with the accountants and produce said records or if the disagreement(s) is not resolved, the matter will be referred by the accountants to the attorneys for the Union and/or the Funds. . . . [T]he attorneys will notify the Secretary of the Joint Arbitration Board of the existence of a dispute under this agreement. . . .
> Action will be brought before the Joint Arbitration Board by the Union, Employer, or any other interested party when any audit reveals that a licensed journeyman plumber and/or apprentice or any other party who performs jurisdictional work had not been paid the prevailing rate.

*Id*. Section 3.5 of the same article governs hearings. It provides, in relevant part,
> After receipt of a notice of dispute under Section 3.3 or 3.4, above, of this Article, the Secretary of the Joint Arbitration Board shall send the Employer written notice of the date, time and place of a hearing before the Board with respect to the dispute. . . . The

3

its own grievance with the JAB. *Id.* ¶ 55. Although Roughneck does not attach a copy of this grievance, Paragraph 56 of its complaint alleges that

> Roughneck's grievance involved a dispute over whether all the work performed by Roughneck employees was work within the trade jurisdiction of the Plumbers to the exclusion of other trade unions whose members were employed by Roughneck to perform the work, in particular, the Laborers and Electrical Workers.

*Id.* ¶ 56. On the same day that Roughneck filed its grievance, Roughneck's president, Karen Johnson ("Johnson"), sent a letter to Mr. Lindsay which read, in relevant part,

> Since this is a jurisdictional matter, I do not believe it can be resolved in any meeting with you or the [Funds]. For that reason, I am asking you to advise the Joint Arbitration Board of a dispute under my firm's collective bargaining agreement with [the Plumbers' Union] and request a hearing before the Joint Arbitration Board, as provided under Sections 3.3 and 3.5 of the Agreement.

Letter from Johnson, President, Roughneck, to Lindsay, Counsel for Funds (Feb. 12, 2008), attached as Ex. O to Compl. Roughneck admits that Mr. Lindsay subsequently notified the JAB of the dispute in accordance with Johnson's request. Pl.'s Resp. in Opp. to Funds' Mot. to Dismiss at 12 (hereinafter "Pl.'s Resp."). The JAB did not segregate the Funds' and Roughneck's grievances. *See* Letter from Todd L. Sarver, Counsel for Roughneck, to Richard Resnick, Administrator to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (July 16, 2008) at 3, attached as Ex. Q to Compl. (hereinafter "Sarver Letter").

The first JAB hearing was scheduled for April 30, 2008 but, prior to that date, Roughneck requested that the Secretary of the JAB postpone the matter. Compl. ¶ 57. The postponement was granted and the hearing was continued to May 28, 2008. *Id.* Roughneck appeared at the May 28, 2008 hearing and requested an additional continuance in order to secure

---

Employer must appear at the hearing.
*Id.*

4

new counsel, which the JAB granted. *Id.* ¶ 59. On July 14, 2008, the Secretary of the JAB notified Roughneck that it had rescheduled the hearing for July 22, 2008 at 8:00 a.m. *Id.* ¶¶ 60, 69.

### III. Roughneck's Invocation of the National Plan

On July 16, 2008, two days after Roughneck was given notice of the JAB hearing, Roughneck sought to invoke a dispute resolution mechanism under the Plan for the Settlement of Jurisdiction Disputes in the Construction Industry ("National Plan").[5] In a letter to Richard Resnick, the administrator of the National Plan, captioned "Notice of Impediment to Job Progress," Sarver stated, in relevant part

> Dear Mr. Resnick:
>
> We represent [Roughneck]. This letter is to provide you of written notice of an impediment to job progress that is now taking place in Cook County, Illinois by the [Plumbers' Union]. . . .
>
> This impediment to job progress has been caused by the filing of a notice of dispute (grievance) on January 22, 2008 by the [Funds'] under the parties' CBA, and a separate grievance filed on February 12, 2008 by Roughneck. . . . The issue at the JAB hearing involves a dispute over whether the Plumbers have jurisdiction over all work performed by Roughneck to the exclusion of other trade unions that

---

[5] Roughneck and the Plumbers' Union are stipulated parties to the National Plan but the Funds are not. Compl. ¶ 71. Article III of the National Plan governs "Strikes and Impediments to Job Progress" and provides

> 1. When it is alleged, in a written notice, by a stipulated employer directly affected by the dispute, or the signatory Employer Association representing such employer, that a work stoppage, slowdown, or other impediment to job progress is taking place, the Administrator shall proceed as set forth in Article VI of the Plan.
>
> \* \* \* \*
>
> 3. Impediments to job progress shall include, but not be limited to:
>    a. Filing a grievance under a collective bargaining agreement . . . . where an issue is a case, dispute or controversy involving a jurisdictional dispute or assignment of work by a stipulated contractor, or by a stipulated subcontractor. Provided, that it shall not be considered an impediment to job progress if the responsible contractor is not stipulated to the plan.

Art. III, National Plan, attached as Ex. C to Compl.

5

performed the work at issue, in particularly, the [Electrical Workers' and
Laborers' Unions].

The Fund[s] contend[s] that all work performed by Roughneck for the time period
October 1, 2002 to present is work subject to the Plumbers' jurisdiction and
accordingly, contributions for all work performed must be made to the Fund[s] by
Roughneck. The Fund[s] submit[] that the contributions required for the work
performed are in excess of $2 million. A determination by the JAB regarding
Roughneck's liability for the alleged amounts due to the Fund[s] turns entirely
upon whether the work performed was within the jurisdiction of the [Plumbers'
Union] as opposed to the [Electrical Workers' and Laborers' Unions], or any
other trade union.

Accordingly, this dispute is a jurisdictional dispute between labor organizations
regarding the work performed.[6] The Standard Agreement establishes the Joint
Conference Board which is a local board recognized under Article VIII of the
National Plan for jurisdictional disputes arising in Chicago and Cook County.[7]

---

[6] Article XIII of the CBA governs "Jurisdictional Disputes." It provides
> The Employer and the Union agree that in the event of any jurisdictional dispute between
> the Union and another labor organization bound by the Standard Agreement establishing
> the Joint Conference Board of the Construction Employees' Association of the Chicago
> and Cook County Building Trades Council with respect to any work at or related to any
> site or project within Cook County, Illinois at which the employer is engaged or is to be
> engaged as a contractor or subcontractor or to perform any work, said dispute shall be
> submitted to said Joint Conference Board for final and binding resolution pursuant to the
> said Standard Agreement and the Board's procedures thereunder. The Employer and
> Union agree to be bound by the procedures and decision of the Joint Conference Board
> with respect to any such dispute in accordance with said procedures.

CBA, Art. XIII.

[7] The Standard Agreement is between the Construction Employers' Association and The Chicago & Cook
County Building & Construction Trades Council (referred to in the text as the "Standard Agreement").
Roughneck and the Plumbers' Union are stipulated parties to the Standard Agreement. Compl. ¶ 19.
Article VI of the Standard Agreement provides, in relevant part,
> The Joint Conference Board shall be responsible for the administration of this
> Agreement. The primary concern of the Joint Conference Board shall be the adjustment
> of jurisdictional disputes by arbitrators selected by the Board. Decisions rendered by any
> arbitrator under this Agreement appointed by the Joint Conference Board relating to
> jurisdictional disputes shall be only for the specific job under consideration and shall
> become effective immediately and complied with by all parties. In rendering a decision,
> the Arbitrator shall determine:
> a)    First whether a previous agreement of record or applicable agreement,
>       including disclaimer agreement between the National or International
>       Unions to the dispute or agreements between local unions involved in the
>       dispute, governs;
>                               * * * *
> . . . . Agreements of record are those agreements binding on employers stipulated to the
> Plan for the Settlement or Jurisdictional Disputes in the Construction Industry (the
> "National Plan"), the National Plan's predecessor joint boards, or to the Standard

6

> The Standard Agreement establishing the Joint Conference Board, however, has no provision that address[es] such an impediment to job progress, nor do the procedures of the Chicago Joint Conference Board provide for the resolution of such impediments to job progress.

Sarver Letter at 1-2. Accordingly, Sarver contended that the National Plan, which does address impediments to job progress, applied to the dispute. *Id*.; *see also* Compl. ¶ 25 ("The Standard Agreement has no provision addressing the removal of an impediment to job progress. Accordingly, a party seeking removal of the same must resort to dispute resolutions [sic] procedures set forth in the National Plan."). The letter went on to assert that, although the Funds had filed a grievance, they did not have authority to prosecute it before the JAB because they were not a party to the CBA, and did not constitute an interested party within the meaning of Section 3.3. Sarver Letter at 2-3. Because the Plumbers' Union would be the one prosecuting the grievance before the JAB, Roughneck contended that it had violated the National Plan by submitting a jurisdictional dispute to the JAB. *Id*. at 3. Accordingly, Roughneck requested that the administrator of the National Plan "immediately remove the impediment to job progress by directing the [Plumbers' Union] to withdraw the grievance filed against Roughneck and to cancel the hearing before the Plumbers' Joint Arbitration Board scheduled for July 22, 2008." *Id*. at 4. The Plumbers', Laborers' and Electrical Workers' Unions, as well as the Funds, were copied on Sarver's letter.

The same day Resnick received Sarver's letter, he forwarded a copy to William Hite, the President of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("United Association"). Letter from Richard Resnick, Administrator and Counsel to the National Plan, to William P. Hite, President of the United Association (July 16, 2008), attached as Ex. R to Compl. Resnick stated, in relevant part,

---

Agreement.
Art. VI, Standard Agreement, attached as Ex. B to Compl.

7

> The facts of this matter present a question of stipulation because the grievance giving rise to the impediment of job progress charge was filed by the Fund[s]. Although Roughneck and [the Plumbers' Union] are stipulated to the Plan, there is no evidence that the Fund, as a separate entity, is stipulated. For this reason, Roughneck alleges that although the Fund filed the grievance, it is [the Plumbers' Union] that is pursuing the grievance. Please review the attached correspondence and advise me of your position on the question of stipulation.

*Id*. Resnick copied Roughneck, the Electrical Workers' and Laborers' Unions, and the Funds.

On July 18, 2008, the Laborers' Union wrote a letter to Resnick in support of Roughneck's position, alleging that the Funds' grievance constituted an impediment to job progress under the National Plan. Ex. S. to Compl. Later the same day, Resnick, the administrator for the National Plan, wrote a letter to the United Association, the Laborers' and Electrical Workers' Unions, and Sarver notifying them that the National Plan had received an additional impediment to job progress complaint from the Laborers' Union. Ex. T to Compl. Resnick stated that he had not yet been informed by the United Association as to its position on the question of stipulation, and that he had denied its oral request for an extension of time given the impending JAB hearing. *Id*. Based on the information submitted by Roughneck and the Laborers' Union, Resnick scheduled a hearing before Arbitrator Paul Greenberg ("Arbitrator Greenberg") to take place in Washington, D.C. on July 21, 2008 at 2:00 p.m. *Id*. Lindsay was copied on the letter.

On July 21, 2008, Lindsay wrote Hite a letter advising him of the Funds' position on the stipulation. *See* Letter from Lindsay to Hite (July 21, 2008), attached as Ex. U to Compl. (hereinafter "Lindsay Letter"). Lindsay characterized the dispute before the JAB as one between the Funds and Roughneck, arguing that the Funds were an interested party within the meaning of Section 3.3 of the CBA such that they had the ability to prosecute the dispute before the JAB. *Id*. at 1-2. Lindsay further asserted that the Funds had the authority to request contributions for

8

hours worked by members of unions other than the Plumbers' Union because Roughneck was using non-Plumbers' Union workers in the Plumbers' trade jurisdiction. *Id.* at 2. Because Roughneck had not requested an extension from the JAB, Lindsay stated that the JAB hearing scheduled for the following day would proceed and, if the JAB determined that the Funds were an interested party within the meaning of Section 3.3 of the CBA,[8] they would seek resolution of the dispute at that time. *Id*. at 3.

## IV.     The July 21, 2008 Hearing before Arbitrator Greenberg

At 2:00 p.m. eastern time on July 21, 2008, Arbitrator Greenberg conducted a hearing in Washington, D.C. Compl. ¶ 76. The hearing was attended by Roughneck, the United Association, the Electrical Workers' Unions and the Laborers' Unions. *Id.* The Funds were not participants in the hearing. *Id*. At 7:10 p.m. eastern time, Arbitrator Greenberg issued a decision and order ("Greenberg Decision") addressing two issues: (1) whether the National Plan had jurisdiction over the scheduled JAB proceeding, and (2) whether the JAB proceeding constituted an impediment to job progress under the National Plan's procedural rules. Ex. V to Compl. In regard to the first issue, Arbitrator Greenberg wrote

> Attorney Lindsay[' s letter] raises an interesting argument in challenging the [National] Plan's jurisdiction over the [Funds]. However, even if there may be some question about the jurisdiction of the [National] Plan over the benefit funds themselves, the [National] Plan's jurisdiction over [the Plumbers' Union] and the [Plumbing Contractors' Association] – and by extension the Joint Arbitration Board – is not in doubt. When agreeing to resolve jurisdictional disputes through the mechanisms of the Chicago Joint Conference Board and the [National] Plan, the [Plumbers' Union] and the [Plumbing Contractors' Association] voluntarily agreed to the [National] Plan's jurisdiction. To the extent a [National] Plan arbitrator concludes that a matter brought before the Joint Arbitration Board violates the [National] Plan, I find the [National] Plan arbitrator has the power to enjoin the Joint Arbitration Board's actions, as well as the actions of the Local Union or the Association.

---

[8] Under Sections 3.1 and 3.2 of the CBA, the JAB has authority to hear "[d]isagreements or disputes arising under or which involve interpretations of [the CBA]." CBA, Art. III, Sec. 3.1.

9

*Id*. at 4.  In regard to the second issue, Arbitrator Greenberg wrote

> In this case, the Joint Arbitration Board has entertained a grievance that seeks to recover $2.2 million in benefit fund payments from Roughneck.  It is apparent from the auditors' January 2008 report that all the benefit fund payments are based on hours that were worked by employees represented by the Laborers' or Electrical Workers[' Unions].  In essence, the benefit fund auditors are disputing whether Roughneck correctly assigned the work to employees represented by the other crafts.
>
> In this Arbitrator's view, this effort to collect fringe benefit payments is patently jurisdictional in nature, and thus prohibited.  If [the Plumbers' Union] believes it has a legitimate jurisdictional claim to work being performed by other crafts employed by Roughneck, the collective bargaining agreement has a clear mechanism available for [the Plumbers' Union] to vindicate its jurisdictional rights and the rights of the workers it represents.  But the claim now scheduled for hearing on July 22 is <u>not</u> the appropriate mechanism, but instead is barred.
>
> I find the upcoming proceeding before the Joint Arbitration Board constitutes an impediment to job progress, and therefore is prohibited by the [National] Plan.  The [Plumbers' Union], the [Plumbing Contractors' Association] and the Joint Arbitration Board are hereby ORDERED to dismiss the matter currently scheduled to be heard July 22, 2008.

*Id*. at 5-6.  The Funds received notice of the Greenberg Decision prior to the JAB hearing.  The JAB does not appear to have received notice prior to its scheduled hearing.

**V.      The July 22, 2008 JAB Hearing**

The JAB held the hearing as scheduled the following morning in Chicago, Illinois.  The Funds and the Plumbers' Union were present; Roughneck chose not to attend.  Compl. ¶¶ 79-81.  The same day, the JAB issued a decision and award ("JAB Award"), finding, in relevant part,

1. The Fringe Benefit Funds may prosecute this dispute under Section 3.3 of the Collective Bargaining Agreement.

2. The Employer has violated the Collective Bargaining Agreement by having employees other than the [Plumbers' Union] journeymen do plumbing from October 01, 2002, through July 31, 2006.

10

Ex. W to Compl. at 1. The JAB ordered Roughneck to pay in excess of the $3.3 million in delinquent contributions, liquidated damages, interest and fines to a contribution account that benefits the Funds.[9]

## VI. The Ensuing Litigation

On October 20, 2008, Roughneck filed this case, No. 08-cv-5990, to vacate the July 22, 2008 JAB award. Paragraph 87 of the complaint states

> Based upon the foregoing, the Decision and Award of the JAB should be vacated and set aside for one or more of the following reasons:
> A.     The JAB . . . did not have the authority or the jurisdiction to conduct the arbitration hearing.
> B.     The [Plumbing Contractors'] Association, the Plumbers[' Union] and [the] Funds did not have authority to prosecute the dispute;
> C.     The JAB exceeded its powers in hearing the Plumbers' [Union's] and/or the Funds' grievances and issuing the Decision and Award;
> D.     The [Plumbing Contractors'] Association, [the Plumber's Union], and [the] Funds violated the CBA, Standard Agreement and National Plan;
> E.     The JAB acted dishonestly in issuing its Decision and Award; and/or
> F.     The Decision and Award does not draw its essence from the CBA, is contrary to the terms of the CBA, and is not drawn from federal law.

Compl. ¶ 87. Roughneck filed a second case before this court, Case No. 08-cv-7047, on December 9, 2008, naming the Plumbing Contractors' Association, the Plumber's Union and the JAB as defendants.[10] In that case, Roughneck seeks to enforce the Greenberg Decision under Section 9 of the FAA, codified at 9 U.S.C § 9. On January 1, 2009, it was reassigned on the basis of relatedness.[11] See Docket No. 22.

---

[9] See Transcript of Proceedings before Judge Shadur, at 12:4-13:15, attached as Ex. A to Funds' Position Paper (Docket No. 62).
[10] The JAB has since been dismissed as a defendant. See Docket No. 58.
[11] Both cases were transferred from Judge Moran's calendar to this court's calendar on April 13, 2008.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen'l Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Factual allegations must, however, be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-236 (3d ed. 2004)); *see also Ashcroft* v. *Iqbal*, — U.S —, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) ("*Twombly* expounded the pleading standard for all civil actions") (citations omitted) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

Federal Rule of Civil Procedure 10(c) provides, in relevant part, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Local 15, IBEW* v. *Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007) ("Any written instrument, such as an arbitration award, that is attached to a complaint is considered part of that complaint." (citations omitted)). "[W]here an exhibit conflicts with the allegations of the complaint, the exhibit typically controls," *Lassey* v. *Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) (citations omitted). Accordingly, a plaintiff "may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id.*; *see also Thompson* v. *Washington,* 362 F.3d 969, 970 (7th Cir. 2004) ("[I]f a complaint

pleads facts that show that the plaintiff does not have a claim, the complaint should be dismissed without further ado.")

## ANALYSIS

Before reaching the Funds' argument that Roughneck has forfeited its right to challenge the JAB's authority to issue its award, the court pauses to discuss the extraordinary nature of the relief sought by Roughneck. Roughneck requests that this court vacate an arbitration award. "Judicial review of an arbitration award is extremely limited." *E.I. Du Pont de Nemours & Co.* v. *Grasselli Employees Indep. Assoc. of E. Chicago, Inc.*, 790 F.2d 611, 614 (7th Cir. 1986) (collecting cases). The bases upon which a court may vacate an arbitrator's award are limited by Section 10 of the FAA, which provides in relevant part

>  (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
>  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9. U.S.C. § 10. "A reviewing court will enforce the arbitrator's award so long as it 'draws its essence from the contract,' even if the court believes the arbitrator misconstrued its provisions." *United Food & Commercial Workers, Local 1546* v. *Ill.-Am. Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) (quoting *United Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 36, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)). It is well-settled that "[a]n arbitrator's decision draws its essence from the contract if it is based on the arbitrator's interpretation of the agreement, correct or incorrect though that interpretation may be." *Id*. (citations omitted). "It is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference either) that the award can be said

not to draw its essence from the collective bargaining agreement." *Ethyl Corp.* v. *United Steelworkers of Am.*, 768 F.2d 180, 184-85 (7th Cir. 1985). In short, the court "will uphold an arbitral award unless there is no possible interpretive route to [it], so a non-contractual basis can be inferred." *Prostyakov* v. *Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) (citations omitted) (internal quotation marks omitted). This deferential standard of review "is essential to prevent the judicialization of the arbitration process." *Grasselli*, 790 F.2d at 614 (citations omitted) (internal quotation marks omitted).

Although Roughneck advances several reasons in support of its request for relief on Count I, only Roughneck's contention that the JAB's resolution of the dispute "exceeded its powers" in holding the July 22, 2008 hearing and issuing its decision, Compl. ¶ 82(c), and that the JAB's award did not draw its essence from the CBA, Compl. ¶ 82(f), are cognizable bases on which the court may vacate the JAB's award. Relying on the doctrine of promissory estoppel, Roughneck also asks the court to vacate the award in Count II. Promissory estoppel, however, is not a valid basis under Section 10 of the FAA to vacate an arbitration award. Accordingly, Count II must be dismissed for failure to state a claim on which Roughneck's requested relief can be granted. With the relief requested by Roughneck properly framed, the court turns to the Funds' argument that Roughneck is barred from seeking it.

The Funds move to dismiss Roughneck's complaint, arguing that it has forfeited its right to challenge the JAB's authority to issue the July 22, 2008 award because Roughneck failed to raise such an argument before the JAB, and because Roughneck "voluntarily and unreservedly" submitted to proceeding before the JAB. Funds' Mot. to Dismiss at 5 (hereinafter "Funds' Mot."). In response, Roughneck contends that its challenge to the JAB's authority is analogous to a challenge to a court's subject matter jurisdiction, and therefore cannot be waived even if the

14

court finds that Roughneck consented to proceed before the JAB. *See* Pl.'s Resp. at 2.[12] But, as the case law provided by the Funds makes clear, the Seventh Circuit has rejected the analogy Roughneck seeks to employ. In *Moseley, Hallgarten, Estabrook & Weeden, Inc.* v. *Ellis*, 849 F.2d 264 (7th Cir. 1988), the defendant appealed the district court's denial of his motion to vacate or modify an arbitration award, arguing that the arbitration panel lacked subject matter jurisdiction to determine certain issues regardless of whether they were submitted to the panel by the parties. *Id*. at 268. In response to that argument, the court stated,

> We note that [defendant's] suggestion that the subject matter jurisdiction of the arbitrators could not be enlarged by the conduct of the parties misapplies the analogy – the authority of the arbitrators, unlike that of a court, [i]s rooted in the parties consent.

*Id*. at 268-69 (citations omitted) (internal quotation marks omitted). *See also Fansteel, Inc.* v. *Int'l Assoc. of Machinists & Aerospace Workers*, 708 F. Supp. 891, 903-04 (N.D. Ill. 1989) (Shadur, J.) (analogy of arbitrability to subject matter jurisdiction is false because parties may waive their arguments as to lack of an arbitrator's authority but "[n]o consent by a litigant can cure an absence of subject matter jurisdiction"), *aff'd*, 900 F.2d 1005 (7th Cir. 1990). The authority of arbitrators is rooted in the parties' consent because arbitration is a matter of contract; "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs.* v. *Commc'ns Workers of Am.*, 475 U.S 643, 648-49, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

---

[12] Roughneck states
> Defendants surmise that Roughneck "consented," to the JAB's jurisdiction. Their argument is that like personal jurisdiction, once Roughneck "consented," it was bound by the JAB. Thus, when Roughneck failed to appear before the JAB on July 22, 2008, Roughneck "forfeited" its right to challenge the JAB decision, or in essence, "defaulted." This analogy to personal jurisdiction misses the mark. The proper analogy is to subject matter jurisdiction. "Consent" to personal jurisdiction is meaningless if the tribunal does not have subject-matter jurisdiction.

Pl.'s Resp. at 2-3. In support of this argument, Roughneck cites *O'Brien* v. *R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993). *O'Brien* did not involve arbitration. It simply stands for the basic tenet that personal jurisdiction, unlike subject matter jurisdiction, may be waived. *Id*.

Roughneck's argument that the JAB's lack of authority to decide what it characterized as a jurisdictional dispute under Article XIII of the CBA, and, consequently an impediment to job progress under the National Plan,[13] is best understood as a question of arbitrability. Essentially, Roughneck asks this court to vacate the JAB Decision on the basis that, under the CBA, the dispute was not arbitrable before the JAB but only according to the mechanism provided under the National Plan.[14] "[T]he question of arbitrability – whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination." *Id.* at 649. The Seventh Circuit has been clear, however, that "even though the ordinary rule is that the question whether an agreement to arbitrate exists is one for the court, the right to a judicial determination of arbitrability is, like many rights, one that may

---

[13] The Funds take issue with Roughneck's characterization of its grievance as a jurisdictional dispute and impediment to job progress, arguing that jurisdictional disputes are only subject to arbitration prior to the time the work is performed. *See* Funds' Position Paper at 2 (citing *Alberici-Eby* v. *Local 520, Int'l Union of Operating Engineers*, 992 F.2d 727(7th Cir. 1993)). *Alberici-Eby* involved a dispute between labor unions over how the plaintiff, a general contractor, had divided up construction work at a job site. After their work was completed in accordance with the plaintiff's directions, the labor unions filed grievances under their respective collective bargaining agreements. The plaintiff objected to the first bipartite arbitration on the basis that the grievance filed constituted a jurisdictional dispute. The Seventh Circuit affirmed the district court's denial of the plaintiff's request to vacate the award from the first bipartite arbitration and to compel the unions to proceed to multiparty arbitration (under what appears to be the same national plan at issue in this case). While the Seventh Circuit affirmed on the basis that the plaintiff failed to invoke the multiparty arbitartion it sought compel within the allowed time frame, the court expressed skepticism as to whether the dispute at issue was jurisdictional because the work had already been performed, and because the plan apparently had no authority to award damages for misassigned work. *Id.* at 730 n.2.

Like the Seventh Circuit in *Alberici-Eby*, this court need not determine whether the dispute at issue is jurisdictional, and constitutes an impediment to job progress, as Roughneck contends. Nevertheless, the court notes that the work for which the Funds sought contributions was completed in 2006, despite Roughneck's characterization of the dispute as an ongoing impediment to job progress. *See* Sarver Letter at 1-2. Furthermore, Roughneck's own grievance does not appear to concern any specific job that was ongoing or to be performed in the future.

[14] In addition to the issues surrounding the nature of the dispute to be heard by the JAB, the question of whether the Funds were bound by the Greenberg Decision is also far from clear because the Funds are not a party to the National Plan. Arbitrator Greenberg's finding that it had jurisdiction over the Funds through the Plumbers' Union appears to be based on Roughneck's tenuous assertion that the Funds were not an interested party under Section 3.3. of the CBA and, therefore, that the Plumbers' Union, not the Funds, was prosecuting the grievance before the JAB. The JAB – the party authorized to interpret the CBA's provisions – found, however, that the Funds were an interested party within the meaning of Section 3.3 and therefore were authorized to prosecute their grievance.

be waived." *Envtl. Barrier Co., LLC* v. *Slurry Sys., Inc*., 540 F.3d 598, 606 (7th Cir. 2008) (affirming district court's judgment confirming the arbitrator's award where defendant participated in arbitration proceedings and failed to raise its challenge to the arbitrator's authority before the arbitrator). "If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Jones Dairy Farm* v. *Local No. P-1236*, 760 F.2d 173, 175-76 (7th Cir. 1985) (reversing district court's judgment vacating an arbitration award because the plaintiff went forward with the arbitration without questioning the arbitrator's authority to resolve the dispute, and therefore consented to have it interpret the parties' collective bargaining agreement). "A disputant cannot stand by during arbitration withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging." *Dean* v. *Sullivan*, 118 F.3d 1170, 1172 (7th Cir. 1997); *see also Moseley*, 849 F.2d at 269 ("'A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act.'" (quoting *Ficek* v. *S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964))). Rather, the correct procedure by which to object to arbitrability is "to make [that] position known to the arbitrator and the other party; the other party may then, if it wishes, respond with a petition for an order to compel arbitration under the [FAA] and obtain a judicial determination of arbitrability." *Slurry Sys.*, 540 F.2d at 606 (citations omitted). To allow a party to object to arbitrability after the arbitrator issues a decision would not only be "terribly wasteful of the arbitrator's time, the parties' time, and the court's time," *id*., it would also impermissibly sanction a "wait-and-see approach." *Id.*

The course of action undertaken by Roughneck is clearly prohibited by the cases discussed above. After the Funds filed their grievance with the JAB seeking payment for the

alleged delinquent contributions, Roughneck asked the Funds to notify the JAB of the dispute and convey its consent to proceed before the JAB. Moreover, Roughneck filed its own grievance before the JAB which, by its own characterization, "involved a dispute over whether all the work performed by Roughneck employees was work within the trade jurisdiction of the Plumbers to the exclusion of other trade unions . . . ." Compl. ¶ 56. By doing so, Roughneck voluntarily invoked the authority of the JAB to determine the trade jurisdiction issue and cannot now argue that the JAB lacked the authority to decide it. *See Jones Dairy*, 760 F.2d at 175-76. At no time did Roughneck inform the JAB of any challenges to its authority. The fact that Roughneck raised its concerns – to the Plumbers' Union, the Laborers' Union, the Electrical Workers' Union, and administrator for the National Plan – is of no moment. *See Slurry Sys.*, 540 F.3d at 606 ("The problem is that SSA never said anything [regarding the arbitrator's authority] to the *arbitrator*." (emphasis added)); *Jones Dairy*, 760 F.2d at 173 ("[Jones Dairy] did not, while agreeing to participate in the arbitration, challenge the arbitrator's jurisdiction, and make clear that it was preserving its challenge for eventual presentation to a court if the arbitrator ruled in the union's favor."). Roughneck had every opportunity to raise its concerns to the JAB. It could have done so when it wrote the JAB's secretary to request its first continuance, when it appeared at the May 28, 2008 to ask for a second continuance, or, after it received notice on July 14, 2008 of the July 22 hearing. Instead, Roughneck chose to game the system. Without asking for an extension of the July 22 hearing, Roughneck decided to pursue a ruling (under a plan to which the Funds were not even a party) that the JAB lacked authority to resolve the very dispute Roughneck had submitted to it. Once Roughneck received a favorable ruling from Arbitrator Greenberg (at a hearing at which the Funds were not present), it chose to ignore the hearing set according to its prior course of action before the JAB. Roughneck then filed suit in this court to

18

vacate the JAB's award. The Seventh Circuit has been clear that it will not sanction such "sandbagging." *Sullivan*, 118 F.3d at 1172 (affirming the district court's judgment enforcing an arbitration award where, after appearing at three hearings before a joint arbitration board on a fringe benefits dispute, the employer wrote the board stating that he was no longer bound by the arbitration and chose not to attend the fourth and final proceeding). Roughneck is accordingly barred from asking this court to vacate the JAB's decision.

## CONCLUSION AND ORDER

For the reasons discussed above, the Funds' Rule 12(b)(6) motion to dismiss [#28] is granted. The motions to consolidate [#69] and to intervene [#76] are denied as moot. The case is dismissed with prejudice. Accordingly, Case No. 07-cv-7047 must also be dismissed with prejudice.

Dated: September 30, 2009

Enter:

_____
JOAN HUMPHREY LEFKOW
United States District Judge